IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARIELLE WILLIAMS,<br>Plaintiff<br><br>v.<br><br>SCRANTON COUNSELING CENTER,<br>Defendant | : | No. 3:25cv1563<br><br>(Judge Munley) |

## MEMORANDUM

This matter arises from the alleged discriminatory termination of Plaintiff Arielle Williams by Defendant Scranton Counseling Center ("SCC"). Williams asserts claims for disability discrimination and retaliation, wage and hour violations, and for defamation. Before the court is SCC's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, SCC's motion will be denied.

**Background**

Defendant SCC, is a non-profit corporation in Scranton, Pennsylvania that provides mental health treatment services. (Doc. 1, Compl. ¶ 4, 15). SCC hired Williams to provide crisis services in local schools and emergency rooms through defendant's mobile crisis unit. (Id. ¶ 14–15). At the time of the events giving rise to this lawsuit, plaintiff had been employed with defendant's mobile crisis unit for

about one month. (Id. ¶ 14). Plaintiff alleges that she received positive feedback pertaining to her work performance from clients and management. (Id.)

Plaintiff was diagnosed with an autoimmune disease. (Id. ¶ 11). Per a sworn affidavit by plaintiff's co-worker, Haley Hoffman, which is attached to the complaint, it was well known to Hoffman and other employees at SCC that Williams had an autoimmune disease. (Doc. 1-5, Ex. P4 ¶ 5).

### 1. Disability and Retaliation Allegations

According to Williams, on November 8, 2023, her supervisor, Katlyn D'Agostino, arranged a meeting to discuss plaintiff's schedule (Doc. 1, Compl. ¶ 12, 17). At this meeting, D'Agostino terminated plaintiff from her position in the crisis unit. (Id. ¶ 17). Plaintiff asserts that no union or human resources representative attended this meeting, which violated her rights under a Collective Bargaining Agreement. (Id. ¶ 18). Additionally, in the days prior to plaintiff's termination, plaintiff alleges that Brenda Bryan, an upper management staff member, had questioned her about her autoimmune disease. (Id. ¶ 13).

Per the complaint, D'Agostino stated that the decision to terminate Williams came from upper management. (Id. ¶ 17). D'Agostino allegedly told the plaintiff that her condition "posed too much of a liability in the hospital setting" and that, "it was nothing you did at all; everyone likes you here." (Id.) Immediately following the meeting, plaintiff reported the conversation to her co-worker, Hoffman,

indicating, per Hoffman, "they knew about my condition all the while and it never got in the way of me doing my job. They said it's because I'd be going in and out of hospitals but I'm around kids all the time and I'm fine." (Doc. 1, Ex. P4 ¶ 8).

Williams and Hoffman thereafter reported the conversation to a supervisor, Maura Pinto, who allegedly acknowledged the discriminatory nature of the decision. (Doc. 1, Compl. ¶ 19). During this discussion, Hoffman claims plaintiff and Pinto also discussed Bryan's delay of processing plaintiff's union paperwork. (Doc 1, P4 ¶ 9). At this time, SCC allegedly revoked plaintiff's access to her work email and employee portal. (Doc. 1, Compl. ¶ 21).

Williams later filed a union grievance. (Id. ¶ 23). Plaintiff alleges that both she and her union representative contacted SCC and complained that her termination was discriminatory and in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112. (Id.) Additionally, plaintiff and her union representative notified SCC that she had contacted a lawyer who would file an Equal Employment Opportunity Commission ("EEOC") charge if the union grievance did not provide plaintiff with relief. (Id.) Relying on statements witnessed by a third party and the union grievance, plaintiff asserts that her termination was not for cause or due to financial budget cuts. (Id. ¶ 24).

On February 4, 2024, Williams sent a demand letter to defendant, along with a notice to preserve evidence. (Id. ¶ 32). Plaintiff ultimately filed an EEOC

charge. (Id. ¶ 8). On May 26, 2025, plaintiff received a right-to-sue letter from the EEOC. (Id. ¶ 9).

Williams's complaint asserts several claims under federal and state anti-discrimination law. Count I advances a disability discrimination claim under the ADA. Count IV alleges that SCC is liable for retaliation under the ADA, 42 U.S.C. § 12203(a), and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. § 955(d). Count V asserts a claim for violation of the ADA's interference, coercion, or intimidation provision, 42 U.S.C. § 12203(b).

**2. Wage and Hour Allegations**

Williams asserts that SCC constructively terminated her as of November 8, 2023 and then formally terminated her approximately one week later. (Id. ¶ 20). Plaintiff claims that she did not receive all compensation due, including promised wage supplements. (Id. ¶¶ 21, 25). These supplements included an unpaid bonus of $4,500, the cost for plaintiff to become a Licensed Professional Counselor ("LPC"), and outstanding paid-time-off ("PTO") balances. (Id. ¶ 25). Consequently, Williams alleges that SCC violated Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 PA. STAT. § 260.1, in Count II of her complaint.

**3. Defamation Allegations**

Williams also asserts a state law defamation claim against SCC in Count III of her complaint. In support of that claim, plaintiff alleges that defendant made

and published false statements by text message and email to third parties, including two Dunmore High School employees and one captain of the Dunmore Police Department. (Id. ¶ 26–27). Per the complaint, the messages included statements that defendant "grounded [plaintiff] to the office" and defendant had the plaintiff "out on leave because of her disability." (Id. ¶ 26). Plaintiff alleges that the statements concerned her and carried a defamatory meaning that maligned her professional competence and fitness. (Id. ¶ 29). Plaintiff maintains that even after she contacted defendant regarding the defamatory statements requesting that they cease, the defendant continued to make more of the same remarks. (Id. ¶ 28). Per the complaint, the defendant made such statements after being notified of the potential of litigation. (Id. ¶ 29). Additionally, plaintiff claims that the statements foreseeably and intentionally harmed her reputation and future earning capacity. (Id.)

Williams further asserts that she attempted to secure other employment in her field; however, the stress and trauma from her termination prevented her from taking a new position. (Id. ¶ 30). Furthermore, plaintiff alleges her termination contributed to a flare-up of her autoimmune condition, requiring hospitalization and treatment by a psychologist. (Id. ¶ 31). Plaintiff maintains that defendant still refuses to pay her earned paycheck and fears that more efforts to

obtain her wages will result in greater intimidation and retaliation coming from the defendant. (Id. ¶¶ 34–35).

In response to the above allegations, SCC filed a motion to dismiss for failure to state a claim. (Doc. 10). Having been fully briefed, the motion is ripe for disposition.

**Jurisdiction**

The court has federal question jurisdiction over Williams's ADA claims, 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's PHRA, WPCL, and defamation claims, 28 U.S.C. § 1367(a).

**Standard of Review**

SCC has filed a motion to dismiss Williams's complaint pursuant to Rule 12(b)(6). To survive a motion to dismiss for failure to state a claim, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)). This means that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief which is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing

Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. Oldham v. Pennsylvania State Univ., 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted). The second step involves reviewing the operative pleading and disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual. See Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted).

The third step evaluates the plausibility of the remaining allegations. Id. In evaluating plausibility of the plaintiff's allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. Id. (citations omitted).

**Analysis**

SCC's motion seeks dismissal of all claims asserted in the complaint. The court begins with a discussion of Williams's ADA and PHRA claims.

### 1. Plaintiff's ADA and PHRA Claims

Counts I, IV, and V of Williams's complaint allege that SCC violated the ADA's discrimination, retaliation, and interference, coercion, or intimidation provisions. Williams's retaliation claim also invokes the protections of the PHRA.

#### a. ADA Discrimination Claim

Defendant first moves to dismiss plaintiff's claim for disability discrimination under the ADA, which is advanced through a disparate treatment theory of liability. In employment matters, the ADA prevents covered entities from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, plaintiff must show that: 1) she is disabled within the meaning of the ADA; 2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) she has suffered an otherwise adverse employment decision as a result of discrimination. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000).

Defendant challenges plaintiff's allegations regarding the first and second prongs, arguing the complaint fails to plead that the plaintiff is: 1) a disabled

person within the meaning of the ADA; and 2) qualified to perform the essential functions of the job, with or without reasonable accommodation.

As to the first prong, an individual is disabled if they have a physical or mental impairment that substantially limits one or more major life activities; have a record of such an impairment; or are regarded as having such an impairment. 42 U.S.C. § 12102(1). SCC contends the complaint falls short of meeting this standard by not identifying a specific disorder, a record of an impairment, or an allegation that defendant regarded plaintiff as having an impairment. Defendant thus argues plaintiff has not met her burden in pleading this element with the requisite specificity.

Williams counters that at the pleading stage of the proceedings, she is only required to plausibly allege her disability. The court agrees and finds that the plaintiff has met this burden.

Per the complaint, Williams has a diagnosed autoimmune disorder. (Doc. 1, Compl. ¶ 38). She specifically alleges that her supervisor, Katlyn D'Agostino, informed her that she was being let go from her position with SCC in the crisis unit because her disability "posed too much of a liability in the hospital setting." D'Agostino also allegedly stated, "it was nothing you did at all; everyone likes you here," and that the employment decision came from upper management. (Id. ¶ 17). According to the plaintiff, a member of upper management, Brenda Bryan,

asked her questions about her autoimmune disease a few days prior. (Id. ¶ 13). Read as a whole, such allegations meet the actual, "record of," and "regarded as" disability definitions under the ADA.

Defendant also challenges the second prong of plaintiff's prima facie case, that is, whether plaintiff was qualified to perform the essential functions of the job, with or without a reasonable accommodation. Under the definition of "qualified individual," consideration "shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

In the defense's view, the complaint is deficient in its pleading: 1) the essential functions of plaintiff's job; 2) whether plaintiff was qualified to perform the essential functions of the job; 3) whether plaintiff requested accommodations; and 4) whether plaintiff could perform the essential functions without an accommodation. The defendant also argues that the complaint baldly states that plaintiff was qualified without providing any facts supporting the claim.

After review of the complaint, the court disagrees. Williams's allegations set forth her employment in SCC's crisis unit, her qualifications, and her success in the role without any accommodations. (Doc. 1, Compl. ¶ 3, 14). In supporting

these allegations, plaintiff's complaint explains that her employment involved working with individuals requiring mental health services. (Id. ¶ 15). Moreover, plaintiff asserts that she received positive feedback in her job performance from clients and management. (Id. ¶ 14). Taking all well-pleaded allegations as true and drawing every reasonable inference in plaintiff's favor, the complaint plausibly alleges her qualification for the position in SCC's crisis unit.

Accordingly, defendant's motion to dismiss plaintiff's claim for disability discrimination will be denied.

**b. ADA and PHRA Retaliation Claims**

SCC also moves to dismiss plaintiff's ADA and PHRA retaliation claims.[1] Under the ADA, an employer may not retaliate against an employee based upon the employee's opposition to any unlawful act or practice under the ADA. 42 U.S.C. § 12203(a); Shellenberger v. Summit Bancorp. Inc., 318 F.3d 183, 188 (3d Cir. 2003). To establish a prima facie case of retaliation under the ADA, plaintiff must show: 1) a protected employee activity; 2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and 3) a causal connection between the employee's protected activity and the

[1] The court will address plaintiff's ADA and PHRA claims collectively under the same legal standard. See Morgan v. Allison Crane & Rigging LLC, 114 F.4th 214, 220, n. 21 (3d Cir. 2024) ("federal courts should continue to interpret the PHRA in harmony with the ADA."); Colwell v. Rite Aid Corp., 602 F.3d 495, 500, n. 2 (3d Cir. 2010) ("[T]he same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA.").

employer's adverse action. Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002). (citation omitted).

In the defense's view, since plaintiff's disability discrimination claim under the ADA is lacking, her retaliation claim is likewise insufficient. However, this argument misstates the standard required to establish a retaliation claim. The Third Circuit has held that a person's disability status under the ADA is not relevant in assessing the person's retaliation claim under the ADA. Shellenberger, 318 F.3d at 188 (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 498 (3d Cir. 1997)).

Turning to the threshold of protected activities, an individual who brings or participates in formal actions to enforce ADA rights is, in fact, engaging in protected activities under the ADA. Id. As alleged, plaintiff engaged in protected activities by: 1) opposing and reporting disability discrimination to management on and after November 8, 2023; 2) filing and pursuing a union grievance; and 3) retaining counsel and signaling intent to file a charge of discrimination with the EEOC. (Doc. 1, Compl. ¶ 52). In review, the complaint sufficiently avers protected activity.

Per the complaint, after learning of Williams's protected activities, SCC took materially adverse actions that would dissuade a reasonable worker from making or supporting a charge of discrimination. Defendant counters this position stating

they did not prohibit plaintiff from pursuing any remedies. Williams alleges, however, that defendant's adverse actions included: 1) publishing false statements to third parties, including Dunmore High School employees and a Dunmore police captain, specifically that defendant had "grounded [plaintiff] to the office" and placed the plaintiff "out on medical leave because of her disability"; 2) issuing or causing negative job-related communications about plaintiff; and 3) otherwise acting to harm plaintiff's reputation and employment prospects. (Id. ¶ 53).

SCC also challenges Williams's causation allegations at this early stage. A plaintiff may establish a causal link with unusually suggestive temporal proximity, a pattern of antagonism coupled with timing, or from inferences gleaned from the record as a whole. Lauren W. ex rel. Jean W. v. DeFlaminis, 48- F.3d 259, 267 (3d Cir. 2007) (citations omitted). "[I]n cases where a plaintiff must illustrate a 'causal link' for purposes of retaliation, or show that certain conduct was 'used' as a basis for employment decisions, a plaintiff may rely on a broad array of evidence to do so." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 283–84 (3d. Cir. 2000). Upon review, Williams has supplied facts to satisfy the causation element through her allegations of unduly suggestive timing. Accordingly, defendant's motion to dismiss plaintiff's ADA and PHRA retaliation claims will be denied.

### c. ADA Interference, Coercion, or Intimidation Claim

Williams further relies on the ADA's interference, coercion, or intimidation prohibition, which provides in relevant part: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." Fogleman, 283 F.3d at 567 (citing 42 U.S.C. § 12203(b)). The Third Circuit has noted the extended and broader scope of Section 12203(b), which does not expressly limit a cause of action to an employee's protected activities as required in the anti-retaliation provision at Section 12203(a). Id. at 570. To state a claim for interference, coercion, or intimidation under Section 12203(b), plaintiff must allege only that when the defendant coerced, threatened, intimidated, or interfered, she was exercising or enjoying a right protected by the ADA. Snider v. Pa. DOC, 505 F. Supp. 3d 360, 399 (M.D. Pa. 2020).

Williams incorporates her retaliation allegations into this separate statutory claim. As alleged, after plaintiff opposed her discriminatory termination and pursued ADA-protected activities, defendant published false statements to third parties. (Doc. 1, Compl. ¶ 59). Plaintiff alleges these statements were intended to damage her professional reputation and dissuade her pursuit of available remedies. (Id.) Plaintiff alleges these statements were intended to damage her professional reputation and dissuade her pursuit of available remedies. (Id.)

Furthermore, it is alleged that defendant withheld plaintiff's compensation as a form of interference. Additionally, plaintiff claims the defendant removed her access to her employee accounts and withheld promised wage supplements in an attempt to pressure her. (Id. ¶ 59). Accordingly, defendant's motion to dismiss this interference, coercion, or intimidation claim will be denied.

**2. Plaintiff's WPCL Claim**

SCC also moves to dismiss plaintiff's WPCL claim. The WPCL "provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 953 (Pa. Super. Ct. 2011) (citing Oberneder v. Link Computer Corp., 696 A.2d 148, 149 (Pa. 1997)). The WPCL vests authority in the court to compel the payment of owed wages that are limited to the amount to which the parties have agreed. Euceda v. Millwood, Inc., 2013 U.S. Dist. LEXIS 120515, at *1, *9 (M.D. Pa. Aug. 26, 2013). Accordingly, it follows that the plaintiff must demonstrate her contractual entitlement to the unpaid claimed compensation as "[t]he contract between the parties governs in determining whether specific wages are earned." Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990) (citation omitted).

Because the contractual obligation to pay wages is an essential element of a WPCL claim, a claim must fail if the plaintiff does not allege the essential terms of her employment agreement in the complaint. Deron v. SG Printing, Inc., 2012

U.S. Dist. LEXIS 73069 *17-8 (M.D. Pa. May 25, 2012). Per the complaint, defendant employed Williams subject to a Collective Bargaining Agreement. (Doc. 1, Compl. ¶¶14–15, 18). Moreover, plaintiff asserts that she and defendant had agreements, policies, and practices in place wherein the defendant promised to pay plaintiff wages and "fringe benefits or wage supplements." (Id. ¶ 43). Plaintiff further asserts, in this regard, her entitlement to amounts owed, including: a bonus of $4,500; payment of the costs to obtain an LPC license; and a PTO balance. (Id. ¶ 45). In turn, plaintiff alleges that the defendant has neglected to pay the owed wages and wage supplements within the period as required by the WPCL and for more than thirty days beyond the date compensation was owed. (Id. ¶ 44).

The defendant does not dispute that the compensation plaintiff alleges meets the definition of "wages" under the WPCL. Rather, defendant argues plaintiff fails to allege a contract, agreement, term, policy, or practice that would allow plaintiff to recover the claimed compensation. In the defense's view, the complaint lacks the factual allegations of the essential terms of the employment contract. As such, defendant asserts that this precludes a WPCL claim since the contractual obligation to pay wages is a necessary element of the claim.

However, to establish a WPCL claim at this stage, it is not required that the plaintiff plead that a formal employment contract existed; rather, it is sufficient to

plead the existence of some agreement wherein the defendant agreed to pay wages owed to the plaintiff. Euceda, 2013 U.S. Dist. LEXIS 120515 at *12. By pleading her employment, a Collective Bargaining Agreement, and alleged entitlement to various wage supplements, this court finds the plaintiff has set forth enough facts to move forward at this juncture. The motion to dismiss plaintiff's WPCL claim will be denied.

### 3. Plaintiff's Defamation Claim

Finally, defendant moves to dismiss plaintiff's defamation claim. To state a claim for defamation, plaintiff has the burden of proving: 1) the defamatory character of defendant's communications; 2) its publication by the defendant; 3) its application to the plaintiff; 4) the recipient's understanding of its defamatory meaning; 5) the recipient's understanding of it as intended to be applied to the plaintiff; 6) special harm resulting to the plaintiff from its publication; and 7) the abuse of a conditionally privileged occasion. Menkowitz v. Peerless Publs., Inc., 211 A.3d 797, 800 (Pa. 2019) (citing 42 PA. CONS. STAT. § 8343(a)). More simply stated, a plaintiff must plausibly plead and prove that a defendant's published communication was defamatory and sufficiently linked to her. Wang v. Univ. of Pittsburgh, 181 F.4th 301, 310 (3d Cir. 2026) (citing 42 PA. CONS. STAT. § 8343(a)).

SCC raises five challenges to Williams's defamation claim. First, the defense claims the complaint fails to plead the defamatory nature of the statements. Second, SCC argues that plaintiff did not establish publication of the alleged defamatory communication by the defendant. Third, the defendant contends that the complaint did not establish that recipients of the alleged statements understood the meaning to be defamatory. Fourth, defendant argues that the plaintiff has failed to establish that the defendant abused a conditional privilege when the alleged statements were made to third parties. Finally, the defendant argues that the plaintiff did not adequately plead she has suffered special damages or pecuniary losses as a result of the alleged communication. The court will address each issue in turn.

A district court is tasked with determining whether a communication may be construed as defamatory. Graboff v. Colleran Firm, 744 F.3d 128, 135-36 (3d. Cir 2014) (citations omitted). "If the court determines that a statement can support such a meaning, the jury then must decide whether the recipient actually understood the statement to be defamatory." (Id.) A defamatory remark "tends to harm an individual's reputation so as to lower him or her in the estimation of the community or deter third persons from associating or dealing with him or her." Elia v. Erie Ins. Exch., 634 A.2d 657, 660 (Pa. Super. Ct. 1993) (citations omitted). Statements of fact can be defamatory as "can statements of opinion

that 'give[ ] rise to the inference that there are undisclosed facts that justify the forming of the opinion.' " Wang, 181 F.4th at 310 (quoting Meyers v. Certified Guar. Co., 221 A.3d 662, 670 (Pa. Super. Ct. 2019)). Moreover, "[a] communication is also defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession." Krajewski v. Gusoff, 53 A.3d 793, 802-03 (Pa. Super. Ct. 2012) (quoting Rush v. Philadelphia Newspapers, Inc., 732 A.2d 648, 651–652 (Pa. Super. Ct. 1999)).

Williams alleges that SCC made and published false statements to third parties, including two Dunmore High School employees and one Dunmore police captain. (Doc. 1, Compl. ¶ 47). The complaint sets forth the statements published, i.e., that defendant had "grounded [plaintiff] to the office" and placed the plaintiff "out on medical leave because of her disability." [2] (Id.) Plaintiff claims these statements carried an inference that she was behind on paperwork and assignments. (Id.) Accordingly, plaintiff asserts these comments published did malign her professional competence and fitness in her occupation. (Id. ¶ 48).

In challenging Williams's claim, SCC argues that the above statements are not defamatory since, even when accepted as true, they do not lower plaintiff in

[2] The court notes discrepancies in quotations throughout plaintiff's complaint. See, "out on leave because of her disability" (Doc. 1, Compl. ¶ 26) compared to "out on *medical* leave because of her disability" (Id. ¶ 47).

the community or deter third persons from associating with her. Further, the court notes that plaintiff does not allege with much specificity her connection to Dunmore High School or the Dunmore police. While plaintiff's allegations provide minimal factual support, the court can reasonably infer plaintiff was professionally associated with Dunmore High School through her work as an employee in SCC's crisis unit. Assuming that plaintiff had such an association with that school, the statements can be construed as defamatory as they call into question the plaintiff's professional competence and ability to perform her job given her autoimmune disorder.

Turning to defense's challenge with respect to the publication element, "in order for defamation to occur . . . the defamatory statement must be published or communicated to a third person." Elia, 634 A.2d at 660. Further, "a statement is published where it is read and understood as being defamatory of the plaintiff's character." Goldman v. Bennett, 2023 WL 179322, at *1, *4 (Pa. Commw. Ct. Jan. 13, 2023) (citing Gaetano v. Sharon Herald Co., 231 A.2d 753, 755 (Pa. 1967)). Here, plaintiff asserts defendant published allegedly false and defamatory statements to employees of the Dunmore School District and the Dunmore Police Department. (Doc. 1, Compl. ¶ 47). The complaint states: "It is believed the defamatory statements were 'published' via text messages and/or email to such third parties." (Id. ¶ 26). Affording plaintiff the benefit of every

favorable inference from her pleading, the court finds she has plausibly alleged publication.

SCC asserts that the complaint does not allege facts connected to an abuse of a conditional privilege. That is, Pennsylvania law recognizes a conditional privilege "when the speaker and recipient share a common interest in the subject matter and both are entitled to know about the information." Foster v. UPMC S. Side Hosp., 2 A.3d 655, 664 (Pa. Super. Ct. 2010). Moreover:

> An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.

Id. (quoting RESTATEMENT (SECOND) OF TORTS § 596 (1977)).

Once a conditional privilege applies, a plaintiff's defamation cause of action can survive only if the privilege was abused such as "when the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or included defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose." Id. (quoting Moore v. Cobb–Nettleton, 889 A.2d 1262 (Pa. Super. Ct. 2005).

In reasonably inferring Williams's role in providing mobile crisis services at Dunmore High School, a conditional privilege would appear to apply if an employee of SCC communicated with a Dunmore High School employee about Williams's employment. For example, if plaintiff alleged that SCC told a Dunmore High School employee that plaintiff was terminated and she would no longer be reporting there, the complaint would not state a viable defamation claim. The complaint, however, alleges something different, i.e., that SCC communicated that plaintiff was "grounded to the office" or otherwise "behind on paperwork or other tasks" and was "out on leave because of her disability." (Doc. 1, Compl. ¶ 26). To understand whether abuse of the conditional privilege occurred in this alleged scenario, the court would need facts that a pre-discovery plaintiff may not possess, such as why these statements were made and in what context. With all reasonable inferences construed in plaintiff's favor at this stage, she has pleaded enough facts to plausibly state abuse of a conditional privilege.

Next, the defendant argues that the plaintiff did not allege that she sustained special damages or pecuniary losses as a result of the alleged defamatory communications to the third-party recipients. The court finds that plaintiff has plausibly alleged special damages suffered, by pleading that the statements harmed her professional reputation in the community and resulted in lost employment and costs. (Id. ¶ 48, 50).

Finally, the court addresses defendant's argument that plaintiff did not establish whether the third-party recipients of the statements understood the meaning of the communication to be defamatory. Here, the complaint does not offer any factual support to address how Dunmore High School employees or Dunmore police personnel perceived the statements. Here, the complaint does not offer any factual support for whether the third parties inferred a defamatory meaning or any meaning at all. Nonetheless, it cannot reasonably be expected that a plaintiff would know how third parties would perceive a statement without discovery.

Moreover, Williams does not need to establish a prima facie case of defamation in order to survive defendant's motion to dismiss. Connelly v. Lane Constr. Corp., 809 F.3d 780, 788–89 (3d. Cir. 2016) (citations omitted). She simply must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." Id. at 789. Here, plaintiff has met this burden. Accordingly, defendant's motion to dismiss plaintiff's defamation claim will be denied.

**4. Plaintiff's Requests for Relief**

Plaintiff's complaint requests various forms of relief, including: 1) reinstatement or front pay; 2) back pay and all lost wages and benefits; 3) compensatory damages, including emotional damages; 4) punitive damages; 5)

and unpaid wages and wage supplements under the WPCL. (Doc. 1, Compl., at 16, Prayer for Relief). SCC moves to dismiss each category of damages claimed. The court, however, has already determined that plaintiff has plausibly alleged five different claims. Thus, it need not address any of the defendant's damages arguments at this juncture.[3]

**Conclusion**

For the reasons set forth above, defendant's motion to dismiss plaintiff's complaint will be denied. An appropriate order follows.

**Date:** 8/20/26

**JUDGE JULIA K. MUNLEY**
**United States District Court**

[3] ADA remedies are the same as the remedies available under Title VII. See 42 U.S.C. § 12117(a) (incorporating the remedies set forth at 42 U.S.C. § 2000e-5). The Civil Rights Act of 1991, 42 U.S.C. § 1981a, allows plaintiffs to recover compensatory and punitive damages for intentional employment discrimination under the ADA. 42 U.S.C. § 1981a(a)(2), (b). To the extent that the ADA may not allow recovery of compensatory and punitive damages as relief for retaliation claims, that issue is best reserved for a later point in this litigation. As for whether some of the claimed damages are recoverable under the WPCL, nothing precludes the defendant from reraising the same issue on a motion for summary judgment.